UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PENNY A. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-01758-JMS-DKL |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Penny A. Sullivan applied for supplemental security income ("SSI") from the Social Security Administration ("SSA") on May 7, 2007, alleging a disability onset date of May 2, 2007. Her initial application for SSI was denied on August 22, 2007, but the Appeals Council remanded the case to an ALJ on July 1, 2011. [Filing No. 17-3 at 29-31.] A hearing was held on remand on April 20, 2012, in front of Administrative Law Judge James R. Norris (the "ALJ"), who issued a decision on May 16, 2012, concluding that Ms. Sullivan was not entitled to disability benefits. [Filing No. 17-2 at 87-109; Filing No. 17-2 at 29-51.] The Appeals Council denied review on July 23, 2013, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 17-2 at 13-17.] Ms. Sullivan has filed this action pursuant to 42 U.S.C. § 405(g), asking the Court to review her denial of benefits, [Filing No 1; Filing No. 19].

### **I. BACKGROUND**

Ms. Sullivan was thirty-five years old on the date the application was filed, and is currently forty-two years old. [Filing No. 17-2 at 49.] Previously, Ms. Sullivan worked as a clerk at a variety of gas stations and stores. [Filing No. 17-2 at 49.] Ms. Sullivan alleges

1

disability since May 2, 2007, because of a variety of physical impairments that will be discussed as necessary below.[1] [Filing No. 17-2 at 32.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on May 16, 2012. [Filing No. 17-2 at 29-51.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Sullivan had not engaged in substantial gainful activity[2] since May 7, 2007.[3] [Filing No. 17-2 at 35.]

- At Step Two, the ALJ found that Ms. Sullivan suffered from the severe impairments of degenerative disc and joint disease of the lumbar spine, urinary stress incontinence, and obesity. [Filing No. 17-2 at 35.]

- At Step Three, the ALJ found that Ms. Sullivan did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 17-2 at 39.] The ALJ concluded that Ms. Sullivan had the residual functional capacity ("RFC") to perform work within the sedentary range as defined in 20 CFR 416.967(a). Specifically, the ALJ found that she could lift and carry up to ten pounds, sit for most of an eight hour work day if she can stand for five minutes each hour, to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The ALJ

---

[1] Ms. Sullivan detailed pertinent facts in her opening brief, [Filing No. 19 at 1-13], and the Commissioner did not identify any material disputes with those facts, [Filing No. 24 at 1-8]. Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Sullivan, the Court will simply incorporate those facts as needed to resolve the issues raised by Ms. Sullivan.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

[3] Ms. Sullivan worked after the application date, but she earned $98.72 in 2008, which is less than the level of substantial gainful activity as established under 20 C.F.R. § 416.974(b)(2).

also concluded that Ms. Sullivan could not climb ropes, ladders, or scaffolds and must avoid concentrated exposure to cold, heat, wetness, humidity, and vibration. The ALJ further found that Ms. Sullivan must avoid working at dangerous heights and in close proximity to dangerous machinery. [Filing No. 17-2 at 40.]

- At Step Four, the ALJ found that Ms. Sullivan was unable to perform any of her past relevant work. [Filing No. 17-2 at 49.]

- At Step Five, the ALJ found that, considering Ms. Sullivan's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Specifically, the ALJ found that Ms. Sullivan would be capable of working as a semi-conductor assembler, a production worker, and an inspector/tester. [Filing No. 17-2 at 50.]

Based on these findings, the ALJ concluded that Ms. Sullivan was not disabled. [Filing No. 17-2 at 50-51.] Ms. Sullivan requested that the Appeals Council review the ALJ's decision but that request was denied on July 23, 2013. [Filing No. 17-2 at 13-17.] Ms. Sullivan seeks relief from this Court. [Filing No. 1.]

## II. STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it

3

only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can [she] perform h[er] past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). "An affirmative answer leads either to the next step, or, at Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The

4

burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner.  *Clifford*, 227 F.3d at 868.

### III. DISCUSSION

Ms. Sullivan does not challenge the ALJ's determinations regarding her severe impairments (degenerative disc and joint disease of the lumbar spine, urinary stress incontinence, and obesity) or his conclusion that she does not meet or equal a listed impairment.  [Filing No. 17-2 at 35; Filing No. 17-2 at 39.]  Instead, Ms. Sullivan raises two issues regarding the ALJ's determination of her RFC.  First, Ms. Sullivan argues that the ALJ's decision must be reversed because he gave great weight to the opinion of a non-examining physician, Dr. Richard Hutson, who did not review 58 pages of Ms. Sullivan's medical record.  [Filing No. 19 at 16-17.]  Second, Ms. Sullivan contends that the ALJ improperly gave little weight to the opinion of her treating physician, Dr. Diane Kolody.  [Filing No. 19 at 18-21.]

With regard to the first issue, Ms. Sullivan does not contend that Dr. Hutson purposefully ignored the additional 58 pages of evidence.  [Filing No. 19 at 17.]  She argues, however, that Dr. Hutson's failure to review that evidence was not harmless because it included treatment notes from her treating physician, Dr. Kolody, and a favorable opinion of a consultative examiner.  [Filing No. 19 at 17.]

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC finding.  [Filing No. 24 at 11-14.]  The Commissioner does not dispute that Dr. Hutson did not review the 58 pages of medical evidence at issue; however, she contends that it is irrelevant because the ALJ considered the opinions in that evidence and "stated clearly why he rejected them."  [Filing No. 24 at 12.]  The Commissioner further contends that if Dr. Hutson had reviewed that evidence "he too would have rejected the limitations, or, if he did not, the ALJ

5

would have rejected his report as well, for the same reasons set forth in the ALJ's decision." [Filing No. 24 at 14.]

The ALJ is responsible for developing a full and fair record. *Williams v. Massanari*, 171 F. Supp. 2d 829, 833-34 (N.D. Ill. 2001) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)). When an ALJ "incorrectly and unfairly relie[s] on an incomplete [medical expert] opinion," the RFC determination is not supported by substantial evidence. *Williams*, 171 F. Supp. 2d at 833. Moreover, when an ALJ relies on an incomplete medical expert opinion and interprets additional medical records on his own, the ALJ improperly crosses the line between judge and medical doctor. *Id.* at 834 (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" . . . the medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.")). Multiple cases have reversed ALJ decisions relying on incomplete medical expert testimony. *See, e.g.*, *Ivey v. Astrue*, 2012 WL 951481, *12-*13 (N.D. Ind. 2012) (reversing and remanding an ALJ decision that gave significant weight to a state agency reviewing physician to determine claimant's RFC, concluding that "any medical opinion rendered without taking this subsequent record evidence into consideration is incomplete, ineffective, and simply not supported by substantial evidence"); *Bellinghiere v. Astrue*, 2011 WL 4431023, *7-*8 (N.D. Ill. 2011) (reversing ALJ decision for relying on medical expert who did not review medical records from claimant's treating physician, concluding that ALJ improperly substituted her judgment for that of the treating physician); *Staggs v. Astrue*, 781 F. Supp. 2d 790, 795 (S.D. Ind. 2011)

(reversing an ALJ opinion that relied on an incomplete medical opinion, concluding that it was "incomplete and ineffective").

The Court concludes that in determining Ms. Sullivan's RFC, the ALJ committed reversible error by giving great weight to the incomplete opinion of non-examining state agency physician Dr. Hutson. It is undisputed that Dr. Hutson only reviewed Ms. Sullivan's medical records through Exhibit 17F, despite the fact that the medical records available before the hearing contained 58 additional pages of evidence. [Filing No. 17-2 at 92 (Dr. Hutson testimony that he reviewed medical evidence through Exhibit 17F); Filing No. 17-2 at 57 (listing exhibits through Exhibit 21F).] It is also undisputed that contained within the medical records that Dr. Hutson did not review were treatment notes from Ms. Sullivan's treating physician, Dr. Kolody, [Filing No. 17-10 at 46-78 (Exhibit 18F)], a medical opinion from Dr. Kolody concluding that Ms. Sullivan would be absent from work more than four days per month as a result of her impairments or treatment, [Filing No. 17-11 at 15 (Exhibit 21F)], and a consultative examination report from Dr. Muhammad Saafir confirming various limitations related to Ms. Sullivan's back pain, including that she is wheelchair bound, unable to lift heavy objects, shows a limited range of motion, and has decreased strength, [Filing No. 17-11 at 653-62) (Exhibit 20F)]. This material evidence is favorable to Ms. Sullivan's disability claim and could have impacted Dr. Hutson's opinion.

The Court rejects the Commissioner's argument that Dr. Hutson's oversight was harmless because if he had reviewed the additional evidence, "he too would have rejected the limitations, or, if he did not, the ALJ would have rejected his report as well, for the same reasons set forth in the ALJ's decision." [Filing No. 24 at 14.] It is entirely speculative to assume how the omitted evidence, some of which is favorable to Ms. Sullivan, would have impacted Dr. Hutson's

7

opinion. Thus, the Court cannot conclude that the omission was harmless. *See Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010)* (error in the social security context is harmless when it would be a waste of time to remand because it is predictable with great confidence that the ALJ would reinstate her decision on remand if the error was accounted for).

The Court also rejects the Commissioner's argument that there was no error because the ALJ "considered those opinions [that Dr. Hutson overlooked] and stated clearly why he rejected them." [Filing No. 24 at 12-13.] By calling Dr. Hutson as an expert to evaluate the medical evidence, the ALJ created a presumption that a medical expert was necessary. *Williams*, 171 F. Supp. 2d at 834 (citing 20 C.F.R. § 404.1526). The Commissioner's argument would allow the ALJ to "succumb[] to the temptation to play doctor and mak[e his] own independent findings," which is improper. *Williams, 171 F. Supp. 2d at 834* (citing *Schmidt v. Sullivan, 914 F .2d 117, 118 (7th Cir. 1990)*). Finally, the ALJ, by his own statement, relied most heavily on Dr. Hutson's opinion, which was flawed and incomplete.

For these reasons, the Court agrees with Ms. Sullivan that the ALJ's decision must be reversed and remanded because he gave great weight to the opinion of a non-examining medical expert who did not review material evidence favorable to Ms. Sullivan's disability claim. Given this conclusion, the Court need not address at length the second issue Ms. Sullivan raises regarding the ALJ's decision to give the opinion of Ms. Sullivan's treating physician, Dr. Kolody, little weight. [Filing No. 19 at 18-21.] Instead, the Court reminds the ALJ on remand to consider the factors for evaluating opinion evidence set forth in 20 C.F.R. §§ 404.1527 and 416.927 and build a logical bridge from the evidence to his conclusions, *Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009)*.

## V. Conclusion

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Sullivan benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

**Electronic Distribution via CM/ECF:**

Michael G. Myers
mgmyers10@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov